IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JOHN LYTLE, JASON WILLIAMS, CHERYL LOVEALL, and JUST BREATHE, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>MARTIN HALL, CHANGING TIDES GROUP, PAUL WOOTTEN, and DE-SADEL SA, LTD,<br><br>Defendants. | ORDER AND MEMORANDUM DECISION<br><br>Case No. 2:19-cv-619-TC-DAO |

Plaintiffs John Lytle, Jason Williams, and Cheryl Loveall have moved under Rule 55(b) of the Federal Rules of Civil Procedure for default judgment against Defendants Changing Tides Group, Ltd. (CTG), Paul Wootten, and De-Sadel SA, Ltd (De-Sadel).[1] (See Mot. for Default J. Against Changing Tides Group, Paul Wootten and De-Sadel, ECF No. 115 ("Motion").) As required, they have obtained certificates of default for each of those Defendants under Rule 55(a). (See Apr. 21, 2020 Default Certificate (Paul Wootten), ECF No. 25; May 6, 2020 Default Certificate (De-Sadel SA, LTD), ECF No. 27; Jan. 13, 2021 Default Certificate as to Changing

---

[1] The motion includes Plaintiff Just Breathe, LLC as well, but the motion's "Conclusion" section only requests monetary damages for Mr. Lytle, Mr. Williams, and Ms. Loveall. (Mot. for Default J. against Changing Tides Group, Paul Wootten and De-Sadel at 18–19, ECF No. 115.)

1

Tides Group, ECF No. 95.)  A fourth defendant, Martin Hall, has not defaulted and is currently defending against Plaintiffs' Motion for Summary Judgment.[2]

Plaintiffs allege nine causes of action against all Defendants: breach of contract, conversion, constructive fraud, fraud in the inducement, unfair and deceptive trade practices, breach of fiduciary duty, breach of implied covenant, unjust enrichment, and civil racketeering under the Racketeer Influenced and Corrupt Organizations Act[3] (RICO).  Their claims arise out of investment contracts, agreements to pay commissions, and a fiduciary agreement, all related to two $250,000 investments initially placed by Plaintiffs John Lytle and Jason Williams with CTG.  Defendants solicited $250,000 from both Mr. Lytle and Mr. Williams "on the premise that [Mr. Lytle and Mr. Williams] would receive a 25% return on their investments to be paid to them every month."  (Compl. ¶ 2, ECF No. 2.)  Plaintiff Cheryl Loveall was to receive commissions in connection with the investment contracts.  According to Plaintiffs, "Defendants, acting individually and in concert pursuant to a plan to defraud, have since failed and refused to make any further payouts [following some initial, small payments] or to perform their obligations under the [investment and fiduciary agreements]."  (Id. ¶ 6.)

For the most part Plaintiffs do not differentiate between Defendants when alleging wrongdoing under each claim.  Likewise, they do not break down their damage demands by defendant.  Instead, each individual Plaintiff seeks a single set of damages from the Defendants as a group, including punitive damages under RICO.[4]  For example, in the Motion, Mr. Lytle seeks approximately $89 million, which he breaks down into four parts, delineated not by defendant but based on his overall loss.  Specifically, he seeks his $250,000 investment principal,

---

[2] See ECF No. 122.
[3] 18 U.S.C. § 1962(c).
[4] See Mot. for Default J. at 18–19; Pls.' Mot. Summ. J. at 2, ECF No. 122.

more than $29 million in accrued returns promised on that investment, $250,000 in punitive damages, and treble RICO damages totaling approximately $59 million. Mr. Williams demands the same. Ms. Loveall asserts damages totaling approximately $6.2 million, which is made up of commissions, general punitive damages, and treble RICO damages.

When CTG, Mr. Wootten, and De-Sadel defaulted, they admitted, as a matter of law, all of the Complaint's well-pleaded facts "and forfeited [their] ability to contest those facts." Tripodi v. Welch, 810 F.3d 761, 764 (10th Cir. 2016). Even so, "'it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" Bixler v. Foster, 596 F.3d 751, 762 (10th Cir. 2010) (quoting 10A Charles A. Wright, Arthur R. Miller, & Mary K. Kane, *Federal Practice and Procedure* § 2688, at 63 (3d ed. 1998)). The court has broad discretion in deciding whether to enter a default judgment. Grandbouche v. Clancy, 825 F.2d 1463, 1468 (10th Cir. 1987).

Courts have expressed concern about entering default judgment against less than all defendants before the entire suit has been resolved. Indeed, the Tenth Circuit, citing the risk of inconsistent judgments, held in Hunt v. Inter-Globe Energy, Inc., that "'when one of several defendants who is alleged to be jointly liable defaults, judgment should not be entered against him until the matter has been adjudicated with regard to all defendants, or all defendants have defaulted.'" 770 F.2d 145, 147 (10th Cir. 1985) (quoting 10 Charles A. Wright, Arthur R. Miller, & Mary K. Kane, *Federal Practice and Procedure* § 2690, at 455–56 (1983)).

To reach that conclusion, the Tenth Circuit relied in particular on the seminal United States Supreme Court decision in Frow v. De La Vega. Frow held that "a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be

3

incongruous and illegal." 82 U.S. (1 Wall.) 552, 554 (1872). The Court of Appeals referred to the Frow holding as a "rule of consistency[.]" Hunt, 770 F.2d at 147.

In Hunt, where the plaintiffs asserted claims of fraud and securities law violations against multiple defendants, the Tenth Circuit determined that deferring decision on a request for default judgment against less than all the defendants would "avoid[] inconsistent liability determinations among joint tortfeasors." Id. (internal citation omitted). The Hunt court reasoned that Frow's "rule of consistency" also applied to damage determinations in a joint-and-several liability situation, where a plaintiff may look to one of multiple parties for satisfaction of the entire award. Id. at 147–48 (citing In re Uranium Antitrust Litig., 617 F.2d 1248 (7th Cir. 1980)).

> [J]ust as consistent verdict determinations are essential among joint tortfeasors, consistent damages awards on the same claim are essential among joint and several tortfeasors. Otherwise, plaintiffs armed with joint and several liability on a single claim could seek to execute on a larger damage award from a party against whom the court awarded a much smaller damage verdict[.]

Id. at 148 (internal citation omitted).

The Tenth Circuit later held that "the applicability of the Frow rule [does not hinge] on whether the defendants are jointly and severally liable. The Frow rule is also applicable in situations where multiple defendants have closely related defenses." Wilcox v. Raintree Inns of Am., Inc., 76 F.3d 394, No. 94-1050, 1996 WL 48857, at *3 (10th Cir. Feb. 2, 1996) (unpublished table opinion). See also 10A Charles A. Wright, Arthur R. Miller, & Mary K. Kane, *Federal Practice and Procedure Civil* § 2690 (4th ed. April 2021 Update) ("Although the rule developed in the Frow case applies when the liability is joint and several, it probably can be extended to situations in which joint liability is not at issue but several defendants have closely related defenses.").

In their motion for default judgment, Plaintiffs rely on their contract, fraud, and RICO theories of liability. Certainly the principles articulated in Frow and Hunt apply to Plaintiffs'

RICO claim, which alleges joint and several liability against all four Defendants, including non-defaulting Defendant Martin Hall. See United States v. Philip Morris USA Inc., 316 F. Supp. 2d 19, 27 (D.D.C. 2004) ("Every circuit in the country that has addressed the issue [of whether joint and several liability applies in the RICO context] has concluded that the nature of both civil and criminal RICO offenses requires imposition of joint and several liability because all defendants participate in the enterprise responsible for the RICO violations."). But the Frow and Hunt principles also apply to Plaintiffs' fraud and breach of contract claims, which, as alleged, arise out of the same transactions and are based on concerted actions of the defaulting and non-defaulting Defendants. The legal defenses one Defendant could assert to avoid liability would be closely related, if not identical, to those applicable to the other Defendants.

Here Plaintiffs have filed a motion for summary judgment against Mr. Hall. The court will be testing the merits of their claims, all of which Plaintiffs asserted against the Defendants as a group. In addition, if any of Plaintiffs' claims against Mr. Hall have merit, the court will have to examine the scope of damages against him, including damages that will overlap (if not duplicate) damages Plaintiffs now seek against the defaulting Defendants.

Considering the nature of Plaintiffs' case in light of Frow, Hunt, and Wilcox, the court finds that entering default judgment now on overlapping claims would unnecessarily risk inconsistent judgments and damages awards. To avoid that possibility, the court denies Plaintiffs' request for default judgment at this time. See also, e.g., Green Oak Hedge Fund, Ltd. v. Hopkinson, No. 2:06-cv-636-TS, 2008 WL 153772 (D. Utah Jan. 14, 2008) (denying default judgment motion without prejudice in case asserting tort and civil RICO claims arising out of one transaction involving defaulting and non-defaulting parties).

**ORDER**

For the foregoing reasons, Plaintiffs' Motion for Default Judgment Against Changing Tides Group, Paul Wootten and De-Sadel (ECF No. 115) is denied without prejudice.

DATED this 21st day of January, 2022.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge